IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

02 AUG 16 PM 2:24

U.S. DISTRICT COURT
N.D. OF ALABAMA

ERA SPEED,                          )

    PLAINTIFF,                      )

V.

                           )   -H-
                            CV-01-1678-S

ADVANCEPCS MAIL SERVICES
OF BIRMINGHAM, INC.,
                           )

**ENTERED**

AUG 1 6 2002

    DEFENDANT.                       )

### MEMORANDUM OF DECISION

The Court has before it the June 14, 2002 motion of defendant AdvancePCS for summary judgment.  Pursuant to the Court's June 17, 2002 order, the motion was deemed submitted, without oral argument, on July 15, 2002.

**I. Procedural History**

Plaintiff Era Speed commenced this action on July 3, 2001 by filing a complaint in this court alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, and 42 U.S.C. § 1981.  Plaintiff contended that Defendant's alleged conduct constitutes:  (1) disability discrimination under the ADA, (2) constructive discharge under the ADA, (3) race discrimination under § 1981, and (4) constructive discharge under



§ 1981.[1]  Specifically, plaintiff alleged that defendant treated
her in a disparate manner from similarly situated white, non-
disabled employees based on her race (black) and disability
(diabetes) and constructively discharged her based on her race
and disability when it denied her request for a lead person and
denied her request to transfer.  Defendant's June 14, 2002 motion
for summary judgment asserts that plaintiff cannot establish a
*prima facie* case of discrimination or constructive discharge on
the basis of disability or race, and defendant is therefore
entitled to summary judgment as a matter of law.  (*See* Def.'s
Mot. Summ. J. at 1.)

   Both parties have filed briefs and submitted evidence in
support of their respective positions.  Defendant submitted
evidence[2] in support of its own motion for summary judgment and

_____

   [1] In her complaint, plaintiff also alleged failure to
accommodate under the ADA.  On July 15, 2002, plaintiff moved to
voluntarily dismiss this claim, and on July 16, 2002, the court
granted plaintiff's motion, dismissing the claim with prejudice
but without prejudice to plaintiff's remaining claims.

   [2] Defendant submitted:  excerpts from the deposition of Era
Speed; 6/29/99 PCS offer of employment to plaintiff; 11/12/99 fax
from Dr. Riser to plaintiff; 1/6/00 PCS Health Systems'
Restatement of Company Policy regarding Harassment and
Discrimination, signed by plaintiff; 1/6/00 acknowledgment of
receipt of PCS Mail Pharmacy Environment document, signed by
plaintiff; 11/10/99 PCS Health Systems Mail Pharmacy Environment,
Birmingham, Alabama, supplement to PCS Employee Handbook;
excerpts from PCS Health Systems' 1999 Employee Handbook; 5/19/00
complaint filed by LaTanya Pritchett against plaintiff; 7/14/00
Performance Planning and Review Worksheet; 9/6/00 PCS Employment
Posting for Lead Order Entry/Order Prep Clerk; 9/22/00 PCS
Employment Re-Posting for Lead Order Entry/Order Prep Clerk;
10/6/00 written warning issued to plaintiff by Ernie Price;
10/12/00 memorandum from plaintiff to Ernie Price in response to

2

filed a supporting brief on June 14, 2002.  On July 8, 2002, plaintiff filed evidence[3] in opposition to defendant's motion for summary judgment.  On July 16, 2002, plaintiff filed a brief in response to defendant's motion for summary judgment, and on July, 30, 2000, defendant filed a brief responding to plaintiff's brief.

### II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

written warning; typewritten notes from Kerry Kelley regarding 10/31/00 meeting with plaintiff; 11/1/00 plaintiff's resignation letter; 1/16/01 EEOC Charge of Discrimination filed by plaintiff; 4/5/01 EEOC Dismissal and Notice of Rights for plaintiff; excerpts from the deposition of Sherri C. Crowe; Position Description for Order Entry Supervisor; Affidavit of Sherri C. Crowe; excerpts from the deposition of Ernest Price; affidavit of Ernest Price; excerpts from the deposition of DeAndrea Ray; excerpts from the deposition of Takesha Washington; excerpts from the deposition of Latrina Ward; and 10/10/01 plaintiff's answers to defendant's first set of interrogatories to plaintiff Era Speed. Defendant also submitted copies of various court decisions in support of its motion.

[3] Plaintiff submitted: the deposition of Era Speed; the deposition of Sherri C. Crowe; the deposition of Ernest Price; the deposition of DeAndrea Ray; the deposition of Latrina Ward; the deposition of Tasheka Washington; Position Description for Order Entry Supervisor; 7/14/00 Performance Planning and Review Worksheet for Era Speed; 2/28/00 Performance Planning and Review Worksheet for Era Speed; typed note of Kerry Kelley; letter of resignation of Era Speed; 11/12/99 letter from Era Speed's physician; written warning for Melissa Cummins; written warning for Linda Reid; and AdvancePCS' responses to plaintiff's interrogatories.  Pursuant to the Consent Protective Order entered by the court on October 15, 2001, plaintiff filed these evidentiary materials under seal. Pursuant to the order this day entered, they are removed from that seal.

material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249.  The

4

method used by the party moving for summary judgment to discharge
its initial burden depends on whether that party bears the burden
of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-
17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428
(11th Cir. 1991)(*en banc*)).  If the moving party bears the burden
of proof at trial, then it can only meet its initial burden on
summary judgment by coming forward with positive evidence
demonstrating the absence of a genuine issue of material fact;
*i.e.* facts that would entitle it to a directed verdict if not
controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once
the moving party makes such a showing, the burden shifts to the
non-moving party to produce significant, probative evidence
demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at
trial, it can satisfy its initial burden on summary judgment in
either of two ways.  First, the moving party may produce
affirmative evidence negating a material fact, thus demonstrating
that the non-moving party will be unable to prove its case at
trial.  Once the moving party satisfies its burden using this
method, the non-moving party must respond with positive evidence
sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not
bear the burden of proof at trial can satisfy its initial burden
on summary judgment is to *affirmatively* show the absence of

5

evidence in the record to support a judgment for the non-moving
party on the issue in question.  This method requires more than a
simple statement that the non-moving party cannot meet its burden
at trial but does not require evidence negating the non-movant's
claim; it simply requires the movant to point out to the district
court that there is an absence of evidence to support the non-
moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the
movant meets its initial burden by using this second method, the
non-moving party may either point out to the court record
evidence, overlooked or ignored by the movant, sufficient to
withstand a directed verdict, or the non-moving party may come
forward with additional evidence sufficient to withstand a
directed verdict motion at trial based on the alleged evidentiary
deficiency.  However, when responding, the non-movant can no
longer rest on mere allegations, but must set forth evidence of
specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996)
(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561
(1992)).

### III. Relevant Undisputed Facts[4]

Defendant AdvancePCS is a pharmacy mail-order business which
ships prescription drugs to patients throughout the United
States.  (*See* Crowe Dep. at 13-14.)  Defendant hired plaintiff on
July 12, 1999 as supervisor for the order entry department in

---

[4] Facts are undisputed unless otherwise expressly noted.

6

defendant's Birmingham facility.  (*See* Speed Dep. at 28-29; *see also* Crowe Aff. ¶ 5.)  At the time plaintiff was hired, her immediate supervisor was Matt Gray, Manager of Administrative Operations, but in June of 2000, Ernie Price replaced Gray and became plaintiff's immediate supervisor.  (*See* Speed Dep. at 46-47; *see also* Crowe Dep. at 34, 45-46.)

Around the beginning of 1999, plaintiff was diagnosed with diabetes.  (*See* Speed Dep. at 23-24.)  To control her diabetes, plaintiff had to take medication, follow a meal plan, exercise, monitor her glucose levels, and avoid heavy stress.  (*See id.* at 53-54, 60.)  As long as plaintiff complied with her medication, meal plan, and exercise regiemn, her diabetic condition did not impair her ability to perform her job duties.  (*See id.* at 52-54.)

In November of 1999, defendant distributed guidelines which stated in part that it did not permit employees to snack or eat meals at their cubicles on the pharmacy floor.  (*See* PCS Health System Mail Pharmacy Environment, Birmingham, Alabama, supplement to PCS Employee Handbook, Def. Ex. 9.)  Plaintiff informed defendant that she was a diabetic and provided defendant with a letter from her physician stating that plaintiff's condition required her to eat three meals a day, plus a mid-morning and mid-afternoon snack.  (*See* Speed Dep. at 49-51; *see also* Crowe Dep. at 13, 63-64.)  After receiving the note, defendant granted

7

plaintiff exemption from the rule, allowing her to eat at her desk.  (*See* Speed Dep. at 50-51.)

In the summer of 2000, defendant combined the order entry and order preparation departments, making plaintiff supervisor of the newly integrated department.[5]  (*See* Speed Dep. at 105; *see also* Crowe Dep. at 46-50.)  After this combination and concomitant increase in duties, plaintiff requested a lead person for her department to alleviate her responsibilities.  (*See* Speed Dep. at 56-58; 201-202.)  A lead person assists the supervisor, performing job functions such as monitoring the workflow, training employees, monitoring attendance, and utilizing the timekeeping system.  (*See* Crowe Dep. at 32-33.)  In the absence of a lead person, the supervisor of the department is responsible for ensuring that these job duties are performed.  (*See id.*)  Defendant also assigned other supervisors additional departments to supervise along with their original departments, and defendant provided some of these supervisors with a lead person for one or both departments.  (*See id.*)

---

[5] Plaintiff asserts that because of her added responsibilities, she worked longer hours, causing her to miss meals and subjecting her to tremendous amounts of work-related stress.  (*See* Speed Dep. at 55-56.)  However, plaintiff admits that she never advised defendant during her employment that at times she did not have time to eat lunch or snacks, nor did she advise defendant that any problems she had on the job were related to her diabetic condition.  (*See id.* at 55-58.)

As manager over plaintiff's departments, Price was
responsible for determining whether or not to grant plaintiff's
request for a lead person.  (*See* Crowe Dep. at 34.)   Price
initially decided not to do so, but within a month recommended
that plaintiff's department receive a lead person.[6]  (*See* Price
Dep. at 22-23, 27-28; *see also* Crowe Dep. at 60.)   Defendant
posted the new lead person position on September 6, 2000, and re-
posted it on September 22, 2000, lowering the requirements.[7]
(*See* Employment Posting for Lead Order Entry/Order Prep Clerk,
Def. Ex. 17; *see also* Employment Re-Posting for Lead Order
Entry/Order Prep Clerk, Def. Ex. 18.)       Two individuals
applied for the position:  Tasheka Washington and DeAndrea Ray.
(*See* Washington Dep. at 10; *see also* Crowe Dep. at 86.)
Washington already had an application pending in another
department; she was offered and accepted this position before she
even interviewed for the lead person position.  (*See* Washington
Dep. at 10, 19-20, 25-26.)  Price advised plaintiff that hiring
Ray would not be a good idea, as plaintiff and Ray had a history

---

[6] Defendant attributes this change of position to the fact
that it anticipated an increase in business.  (*See* Price Dep. at
22-23, 27-28; *see also* Crowe Dep. at 60.)

[7] Plaintiff suggests that defendant was dilatory in posting
the position, citing Tasheka Washington's testimony that she
would have applied for the position earlier had it been posted.
(*See* Speed Dep. at 100-107; *see also* Washington Dep. at 20-21,
27-28.)

of conflict and difficulty working together.  (*See* Speed Dep. at 109-110.)  Ultimately, defendant did not fill the lead person position until after plaintiff had left defendant's employment. (*See* Price Dep. at 21.)

On October 6, 2000, Price met with plaintiff and issued her a written warning regarding poor job performance.  (*See* Written Warning issued to Plaintiff by Price, Def. Ex. 19.)  The warning stated that plaintiff struggled managing her departments and had problems communicating with the employees under her supervision.[8] (*See id.*; *see also* Speed Dep. 112, 136-37.)

Plaintiff complained on several occasions to Sherri Crowe, the Director of Human Resources, about her stress level from work and her frustration with Price's failure to supply her with a lead person.  (*See* Crowe Dep. at 49.)  On October 31, 2000, plaintiff also spoke with Kerry Kelley, the Director of Pharmacy, and told Kelley that she was considering resigning.  (*See id.* at 65-66; *see also* typewritten notes from Kerry Kelley regarding October 31, 2000 meeting with plaintiff, Def. Ex. 21.)  Kelley told plaintiff that she should discuss the issue with the human resources department, so plaintiff immediately sought out Crowe.

---

[8] This warning was not the first indication that defendant found plaintiff's work performance unsatisfactory:  in a July 14, 2000 evaluation, Gray indicated that plaintiff needed improvement in several areas involving communicating with and relating to her employees.  (*See* Performance Planning and Review Worksheet, Def. Ex. 16.)

(*See* Speed Dep. at 142-45; *see also* typewritten notes from Kerry Kelley regarding October 31, 2000 meeting with plaintiff, Def. Ex. 21.)

Plaintiff asked Crowe about the possibility of transferring to another position. (*See* Speed Dep. at 73-74; *see also* Crowe Dep. at 68-69.) Crowe told plaintiff that at the time no vacant supervisory positions existed and that Crowe would not recommend transferring plaintiff to a non-supervisory position because of the difficulty of a supervisor relinquishing authority, taking a pay cut, and working together with the employees she previously supervised.[9] (*See* Crowe Dep. at 67-69, 71-72.) Crowe did not give plaintiff the option of being lead person in order entry, even though the position was open at the time. (*See id.* at 68-70, 84-85.) However, Crowe lacked authority to tell plaintiff that she could not transfer, as defendant's policy required that requests to transfer be made to the relevant supervisor, and plaintiff never spoke to Price about her desire to transfer. (See *id.* at 72; *see also* Price Dep. at 36-37.) Plaintiff never applied for a transfer to another position. (*See* Crowe Dep. at 69; *see also* Crowe Aff. ¶ 13.)

---

[9] Crowe testified that one reason she did not advise a transfer was that she knew plaintiff was experiencing performance problems in her current position, and that the employees under plaintiff's supervision were frustrated with plaintiff's management. (*See* Crowe Dep. at 83.)

11

Plaintiff and Crowe also discussed plaintiff's possible resignation.[10]  (*See* Speed Dep. at 146-48; *see also* Crowe Dep. at 95-96.)  Crowe told plaintiff that if plaintiff decided to resign, defendant would pay her two months' salary as a severance package.  (*See* Speed Dep. at 149, 152; *see also* Crowe Dep. at 39, 93-94, 96.)  On November 1, 2000, plaintiff submitted a resignation letter accepting defendant's offered severance package.  (*See* Plaintiff's resignation letter dated November 1, 2000, Def. Ex. 22.)

On January 16, 2001, plaintiff filed a charge of discrimination with the EEOC alleging race and disability discrimination.  (*See* EEOC Charge of Discrimination filed by plaintiff, Def. Ex. 24.)  In its Dismissal and Notice of Rights dated April 5, 2001, the EEOC dismissed plaintiff's Charge of Discrimination because the EEOC was unable to conclude that a violation occurred.  (*See* EEOC Dismissal and Notice of Rights for plaintiff, Def. Ex. 28.)  The dismissal specifically stated that plaintiff's allegations did not involve a disability covered by the ADA.  (*See id.*)

---

[10]  Plaintiff testified that Crowe encouraged her to resign, and that plaintiff responded that she would resign only if defendant did not have a non-supervisory position to which she could transfer.  (*See* Speed Dep. at 149-150.)  Plaintiff also stated that she felt that her only options were to resign or be terminated, and that defendant set her up to fail by requiring her to perform two supervisory positions without a lead person and refusing to allow her to transfer.  (See *id.* at 163-165, 194-95.)

### IV. Applicable Substantive Law and Analysis

#### A.   Plaintiff's ADA Claims

Plaintiff claims disparate treatment because of disability and constructive discharge[11] under 42 U.S.C. § 12101, *et. seq.*, the ADA.   The ADA prohibits employers from discriminating against a "qualified individual with a disability because of the disability of such individual."   42 U.S.C. § 12112.   The statute defines "disability" as one of the following:   "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).   In her complaint, plaintiff argues that she is disabled under the third prong:   defendant regarded her as having a disability.[12]

Prior to January 2002, case law made satisfaction of a *prima facie* case under the ADA, particularly meeting the "disability" prong, relatively easy.   However, on January 8, 2002, the Supreme Court significantly altered the definition of "substantially limits a major life activity."   *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184; 122 S.Ct. 681 (2002).

---

[11]   The constructive discharge claim, along with a similar claim under § 1981, will be discussed jointly, <u>infra</u>.

[12] Plaintiff concedes that she does not meet the first or second prong, as she does not suffer from an impairment that substantially limits a major life activity.

In *Toyota*, the Supreme Court reversed a Sixth Circuit decision that found a former employee disabled because she could no longer perform all her manual tasks at work due to carpal tunnel syndrom. *See Toyota*, 122 S.Ct. 681. The Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 691. In determining substantiality, the Court held that any qualifying impairment must be "permanent or long-term[,]" and that the term "clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* Curtailing previous case law defining "major life activities," the Court limited the category only to "those activities that are of a central importance to daily life." *Id.* Specifically, the Court stated that "[w]hen addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job." *Id.* at 693. "[T]he manual tasks unique to any particular job are not necessarily important parts of most people's lives. As a result, occupation-specific tasks may have

only limited relevance to the manual tasks inquiry."[13]  *Toyota*,
122 S.Ct. at 693.

The result of this decision seems to create additional
obstacles for many plaintiffs in disability cases, particularly
those alleging discrimination in the workplace.  Under *Toyota*, it
appears that courts now have greater discretion in determining
what is a major life activity and what interference with that
activity is substantial enough to constitute a disability.

Plaintiff cannot make out a *prima facie* case of any kind
under the ADA because she has not produced evidence which
satisfies the burden she bears of showing that she is "disabled"
under *Toyota*.  In fact, plaintiff unequivocally stated that her
diabetes did not impede her activities outside of the workplace
in any way:

> Q:  During the time you were working for AdvancePCS,
> did your diabetes have any other impact on your life
> outside your work?
> A:  I just had to do follow-up visits to the doctor,
> eye exams to make sure that my vision was okay, things
> like that.
> Q:  Were you restricted in the activities that you did
> before you got diabetes after you contracted diabetes?
> A:  Activities on the job or outside?
> Q:  Outside the job.
> A:  No, not really, no.
>  .  .  .

---

[13] In fact, the Court noted that testimony that *Toyota*'s
plaintiff could brush her teeth, wash her face, bathe, tend her
garden, fix breakfast, do laundry, and pick up around the house
was the very type of evidence the Sixth Circuit should have
focused on, as these seemed the type of manual tasks of central
importance to people's daily lives.  *See Toyota*, 122 S.Ct. at
693.

15

Q:  As long as you followed what your doctor had
prescribed you should do -
A:  I would be okay.
Q:  - you were not restricted from any life activities?
A:  No, no.

As plaintiff admits that her diabetic condition does not
inhibit her life outside of her job, the only possible major life
activity in which plaintiff could claim a substantial limitation
is the life activity of working.  In analyzing such a disability
claim, the Supreme Court has instructed that "the statutory
phrase 'substantially limits' requires, at a minimum, that
plaintiffs allege that they are unable to work in a broad class
of jobs."  *Sutton v. United Air Lines*, 527 U.S. 471, 491 (1999).
Although the *Sutton* plaintiffs alleged that the employer regarded
their impairment as preventing them from working as global
airline pilots, the Court held that disqualification from working
in a single job does not support the claim that a plaintiff has a
substantially limiting impairment.  *See Sutton*, 527 U.S. at 493.

In order to prevail, plaintiff must prove that her diabetes
precluded her from a broad range of jobs.  *See Sutton*, 527 U.S.
at 491; *see also Pritchard v. Southern Co. Serv.*, 92 F.3d 1130,
1133 (11th Cir. 1996) (stating "nor does the inability to perform
a single, particular job . . . constitute a substantial
limitation in the major life activity of working").  By her own
testimony, plaintiff cannot meet this standard.  Plaintiff stated
at her deposition that she was able to perform her job duties
without incident from November of 1999 until June of 2000 when

16

she became supervisor of an additional department pursuant to defendant's restructuring. (*See* Speed Dep. at 53-55.)   This testimony suggests only that plaintiff's impairment might have precluded her from performing a particular job - supervisor of the order entry and order preparation departments.  Under the Supreme Court's holding in *Sutton*, this evidence is insufficient to invoke the protection of the ADA.

The fact that plaintiff attempts to bring her claim within the ADA's ambit by arguing that she satisfies the "regarded as" prong does not alter the preceding analysis.   The court recognizes that "[a]s with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Hilburn v. Murata Electronics NA, Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999)(citing *Standard v. A.B.E.L. Servs, Inc.*, 161 F.3d 1318, 1327 (11th Cir. 1998). Plaintiff has produced no evidence that defendant regarded her as substantially impaired in a major life activity.  When asked at her deposition who at defendant regarded her as disabled, plaintiff responded "I can't recall anyone stating that I was disabled." (Speed Dep. at 186-87.)  She further testified that she didn't know how to explain why she believed that defendant regarded her as disabled. (*See id.*)

As plaintiff cannot state a *prima facie* case of disability, she does not fall within the ambit of the ADA's protection.

17

Defendant is thus entitled to summary judgment on plaintiff's disparate treatment ADA claim.

### B.  Plaintiff's Section 1981 Claims

Plaintiff claims disparate treatment racial discrimination and constructive discharge[14] under 42 U.S.C. § 1981.  Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (1994).[15]  Both the parties and the court are in agreement that the analytical framework appropriate for these claims is set forth in *McDonnell Douglas*, *Burdine*, and their progeny.  *See Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (2000); *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141-42, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Texas Dept. Comm. Affairs v. Burdine*,

---

[14]  The constructive discharge claim is discussed under a separate heading, <u>infra</u>.

[15] The same framework long used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981.  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

18

450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  Further, the court is aware that the summary judgment rule applies in job discrimination cases just as in other cases.  *See Chapman*, 229 F.3d at 1025 (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

Plaintiff's allegations stem from defendant's denial of her request for a lead person and request to transfer.  Defendant argues that it is entitled to summary judgment as to plaintiff's race discrimination claims because plaintiff cannot establish a *prima facie* case of discrimination, or, in the alternative, because plaintiff is unable to rebut defendant's legitimate, nondiscriminatory reasons for the employment actions at issue.

To establish a *prima facie* case of race discrimination under Section 1981, plaintiff must prove that:  (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) defendant treated similarly situated employees who are not members of her class more favorably; and (4) she was qualified for the position at issue.  *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000). Defendant contends that plaintiff is unable to satisfy either the second or third prong.[16]

---

[16] Defendant concedes the first prong, that plaintiff is a member of a protected class.  It plays lip service to the fourth prong, intimating that, given plaintiff's job performance, she may not have been qualified for her positions.  As defendant does

19

The court begins its analysis with the second prong, the adverse employment action requirement.  Plaintiff advances two possible events to meet this prong:  (1) defendant's denial of her request for a lead person, and (2) defendant denial of her request to transfer.  Forgoing any reasoning or analysis, plaintiff simply asserts the *ipse dixit* that both decisions constitute adverse employment actions.

The Eleventh Circuit has held that in order to prove an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).  The standard for judging the adversity and significance of the action is that of a reasonable person in the circumstances; plaintiff's subjective view does not control.  *See id.*  The court concludes that neither defendant's failure to grant plaintiff a lead person[17] nor defendant's failure to allow plaintiff to transfer[18] rises to the

_____

not pursue this argument, the court does not address it.

[17] Plaintiff's assertion that defendant refused to assign her a lead person mildly mischaracterizes the facts.  While Price initially denied plaintiff's request for a lead person, shortly thereafter he decided to grant the request.  Defendant posted and re-posted the lead person position, but was unable to find a suitable person to fill the position until after plaintiff had already resigned from her employment with defendant.

[18] Again, plaintiff oversimplifies the record.  While Crowe advised plaintiff that she would not recommend that plaintiff transfer to a non-supervisory position, Crowe had no authority to deny plaintiff a transfer.  Price, plaintiff's immediate

level of an "adverse employment action."  The evidence fails to
demonstrate that plaintiff's job duties, pay, supervisor, or any
other terms and conditions of plaintiff's employment changed in a
"serious and material" manner as a result of either action.  In
the absence of such evidence, plaintiff cannot satisfy the second
prong of her *prima facie* case.

The court turns its attention to the third prong, the
comparator requirement.  Plaintiff maintains that several white
employees at AdvancePCS similarly situated to her were treated
more favorably than plaintiff because defendant provided them
with lead persons and allowed them to transfer positions. In
order to establish a *prima facie* case of disparate treatment, a
plaintiff must show a comparator who is "similarly situated in
all relevant aspects." *Silvera v. Orange County School Board*,
244 F.3d 1253, 1259 (11th Cir. 2001).  Courts must make certain
that employees are in sufficiently like postures before
considering the challenged actions of an employer. Approaching
claims in such a way avoids "second-guessing employers'
reasonable decisions and confusing apples with oranges." *Id.*;
*see also Maniccia*, 171 F.3d at 1368-69 (citation omitted).  "If a
plaintiff fails to show the existence of a similarly situated
employee, summary judgment is appropriate where no other evidence

---

supervisor, was responsible for decisions regarding any potential
transfer.  Plaintiff neither spoke to Price about her desire to
transfer nor applied for a transfer.

of discrimination is present." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff contends that defendant permitted two white employees, Linda Reid and Melissa Cummins, to transfer voluntarily from supervisory positions to non-supervisory positions. However, defendant originally hired both of these employees into non-supervisory positions in which they performed well, promoted them into supervisory positions in which they struggled, and eventually moved them back to non-supervisory jobs. In contrast, plaintiff never worked for defendant in any capacity other than a supervisory position and performed unsatisfactorily in her initial supervisory position, including receiving a written warning. Plaintiff has produced no evidence of any employee who was hired as a supervisor, performed deficiently in that position, and was subsequently allowed to move to a non-supervisory position.

Plaintiff also asserts that defendant provided at least five white supervisors with lead persons in the departments they supervised.[19] However, the court notes that defendant assigned a lead person to at least one black supervisor, Latrina Ward, and did not assign a lead person to at least three white supervisors, Gary Hurst, Jack Humphries, and Dorinda Clark. Moreover, Price, who was responsible for deciding whether to give plaintiff a lead person and who would have been responsible for deciding whether

---

[19] The employees referred to here are: Linda Reid, Sharon Hester, Wendy Wood, Melissa Cummins, and Jeff Maudlin.

to allow plaintiff to transfer, did not supervise either of these two employees and was not involved in any decisions involving whether to give these employees a lead person or allow them to transfer.   The Eleventh Circuit has stressed that courts must consider the identity of the decisionmaker in determining whether employees are similarly situated.  *See, e.g., Silvera*, 244 F.3d at 1261 n.5; *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1213 n.7 (11th Cir. 1998); *Lubetsky v. Applied Card Systems, Inc.*, 2002 WL 1491654 (11th Cir. July 12, 2002).   Considering these salient distinctions, the court finds that none of these employees were similarly situated to plaintiff in all relevant aspects and that plaintiff has therefore failed to satisfy the comparator prong.

Even assuming, *arguendo*, that plaintiff has established a *prima facie* case, she has still not rebut as pretext defendant's legitimate and nondiscriminatory reasons for the employment decisions at issue.  *See Chapman*, 229 F.3d at 1024-25.  With respect to plaintiff's request for a lead person, Price testified that he initially did not believe that plaintiff's departments needed a lead person because plaintiff supervised a relatively small number of employees, and Price considered the nature of work in those departments "straightforward."  Price explained that he later decided to provide plaintiff with a lead person in response to an anticipated increase in business.  While defendant posted the lead person position twice, the only available

23

applicant had a history of conflict with plaintiff, and Price advised against such a hire.

With respect to plaintiff's request to transfer, plaintiff never applied to transfer to and never spoke to Price about her desire to change positions.  Although plaintiff asked Crowe about the possibility of transferring, Crowe had no authority to decide whether or not plaintiff could transfer.  Crowe did not recommend that plaintiff transfer because at the time, defendant had no vacant supervisory positions, and Crowe opined that it would be difficult for plaintiff to surrender her supervisor status. After speaking with Crowe, plaintiff did not further pursue the issue of a transfer.

Unable to rebut these legitimate, nondiscriminatory reasons for defendant's actions, plaintiff attempts to supplant defendant's business judgment with her own, arguing that the importance of her departments warranted a lead person, and that defendant should have allowed her to transfer to a non-supervisory position.[20]  The court recognizes that defendant's proffered reasons implicate subjective determinations regarding allocation of human resources and assignment of duties.  However,

---

[20] Essentially, plaintiff insists that because defendant allowed two other employees to transfer from supervisory positions to non-supervisory positions, its failure to allow her to do so must have been motivated by discrimination.  As addressed *supra* in the discussion of comparators, these employees had performed well in non-supervisory positions, and defendant returned them to such positions after they struggled with supervisory authority.  These circumstances are distinct from those surrounding plaintiff's desire to transfer.

subjective reasons are legally sufficient, legitimate, nondiscriminatory reasons if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion. *See Chapman*, 229 F.3d at 1032. Federal courts do not reexamine an entity's business decisions; inquiry is limited to whether the employer gave an honest explanation of its behavior. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).[21]

In short, in order to prevail on defendant's summary judgement motion, plaintiff must present a *prima facie* case and must come forward with evidence sufficient for a reasonable jury to conclude that the challenged conduct or decisions were indeed motivated by intentional discrimination or that defendant's proffered legitimate reasons were merely a pretext for illegal discrimination. Plaintiff has not carried her burden of production. At best, she is only quarreling with defendant's articulated reasons, which is not sufficient. *See Chapman*, 229 F.3d at 1030.

---

[21] "For an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory . . . ." *Elrod*, 939 F.2d at 1470 (quoting *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982)); *see also Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987) (holding that discharge was not "because of race" and employer had not violated § 1981 if employer fired employee because it honestly believed employee had violated company policy, even if it was mistaken in that belief); *EEOC v. Total System Servs., Inc.*, 221 F.3d 1171, 1175-76 (11th Cir. 2000).

Plaintiff has failed to show pretext or otherwise prove that intentional discrimination did indeed motivate the defendant. Therefore, defendant is entitled to summary judgment in its favor on Plaintiff's Section 1981 disparate treatment claim.

### C.  Plaintiff's Constructive Discharge Claims

In addition to her claims of disparate treatment, plaintiff alleges that defendant constructively discharged her on the basis of her disability and her race.  To establish constructive discharge, plaintiff must prove that her working conditions were "so intolerable that a reasonable person in her position would have been compelled to resign." *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283 (11th Cir. 1999).  Plaintiff is unable to satisfy this rigorous standard.  While defendant's restructuring forced plaintiff to supervise two departments, other employees also gained supervisory responsibilities over additional departments, with and without the assistance of lead persons. Plaintiff maintains that she resigned because she felt that her only choices were to resign or be terminated, but offers no objective basis for this subjective belief.  Plaintiff's testimony clarifies that the essence of her constructive discharge claim is the stress she experienced performing her job duties and working under a new supervisor.  The court concludes that these conditions were not so intolerable as to force a reasonable person to resign, falling far short of the required threshold. Therefore defendant is entitled to summary judgment in its favor on both constructive discharge claims.

26

In summary, the Court finds that no material issues of fact remain and that defendant AdvancePCS is entitled to judgment as a matter of law as to all claims asserted by plaintiff.   A separate order will be entered.

DONE this _16th_ day of August, 2002.


_____
SENIOR UNITED STATES DISTRICT JUDGE